IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**KRISTINA M. LUSK**,

        Plaintiff,

        v.

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**,

        Defendant.

No. 3:10-cv-01356-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff Kristina M. Lusk challenges the Commissioner's decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

    On March 15, 2006, Ms. Lusk applied for DIB and SSI under Title II and Title XVI of the Social Security Act, claiming disability beginning on February 17, 2006. AR 12.[1] These applications were denied initially on August 10, 2006, and upon reconsideration on November 1, 2006. *Id*. An administrative law judge ("ALJ") held a hearing on April 8, 2009, and on June 1,

---

[1] Citations to the Administrative Record ("AR") refer to the indicated pages in the official transcript of the Administrative Record filed by the Commissioner on June 30, 2011 [9].

1 – OPINION AND ORDER

2009, the ALJ issued her decision denying Ms. Lusk's application. *Id*. at 12, 19. The Appeals Council denied review on September 17, 2010, making the ALJ's decision the final decision of the Commissioner. *Id*. at 1. Ms. Lusk appealed on November 2, 2010.

## THE ALJ'S FINDINGS

The ALJ made her decision based upon the five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); *see also* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920 (establishing the five-step evaluative process for DIB and SSI claims). At step one, the ALJ found Ms. Lusk had not engaged in substantial gainful activity since February 16, 2006, the alleged onset of disability. AR 14. At step two, the ALJ found that Ms. Lusk suffered from the following severe impairments: "obesity, neck and back strain/pain, fibromyalgia, intermittent headaches, and asthma." *Id.* Continuing to step three, the ALJ found that the combination of impairments does not meet or medically equal a disorder listed in the Commissioner's regulations. *Id*. at 16. The ALJ next evaluated Ms. Lusk's residual functioning capacity ("RFC"), finding that she could perform a modified range of light work but was limited as follows:

> The claimant can occasionally lift and/or carry up to twenty pounds, but perform no frequent lifting or carrying. The claimant may sit for one hour at one time for six hours in an eight hour day. She may stand for thirty minutes at one time for four hours in an eight hour day. She may walk for fifteen minutes at one time for two hours in an eight hour day. She is restricted from overhead reaching. She should avoid moving machinery due to the side effects of medication. She is limited to simple, repetitive tasks.

*Id*. At step four, the ALJ found that this RFC allowed Ms. Lusk to perform past relevant work as a cashier, and therefore found her not disabled. *Id.* at 18.

**STANDARD OF REVIEW**

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882. "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

**ANALYSIS**

Ms. Lusk asserts four assignments of error: (1) the ALJ failed to give Dr. Kristin Kocher, M.D. controlling weight and failed to properly account for the opinions of Drs. Tatsuro Ogisu, M.D. and Daniel Scharf, Ph.D.; (2) the ALJ erred because she did not properly evaluate Ms. Lusk's credibility; (3) the ALJ erred in not finding Ms. Lusk's degenerative disc disease and depression severe at step two; and (4) because of the errors in evaluating the medical opinions, the ALJ's RFC finding failed to account for all of Ms. Lusk's limitations and, as a result, the RFC was improper. (Pl.'s Br. [14] 11).

I.  **Medical Opinions**

Dr. Kocher has treated Ms. Lusk since January 2003, and is Ms. Lusk's primary care provider and treating physician. (Pl.'s Br. [14] 3). Ms. Lusk argues that the ALJ erred in giving Dr. Kocher's opinion little weight and failed to properly account for the opinions of Drs. Ogisu and Scharf. (*Id.* at 11). She claims that the ALJ did not properly consider the "full tone and content" of Dr. Kocher's notes, ignored evidence from other medical professionals consistent with Dr. Kocher's opinion, and did not account for their longitudinal relationship. (*Id.* at 18).

    a. *Medical Opinion Standard*

The weight given to the opinion of a physician depends on whether the physician is a treating, examining, or nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Even if it is contradicted, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Id.* at 632. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Morgan*, 169 F.3d at 602.

    b. *Medical Opinion Analysis*

In 2004, Ms. Lusk "began reporting neck pain and stiffness causing headache[s]" and was diagnosed with a cervical strain. (Pl.'s Br. [14] 4). In 2005, she reported she injured her back at work and, following imaging studies, she was diagnosed with degenerative disc disease. As a result of persisting chronic pain, Dr. Kocher opined that Ms. Lusk had severe depression and

anxiety. Ms. Lusk adds that two physical therapists, Mr. Charleston and Ms. Magers, observed multiple signs of decreased range of motion, radiculopathy, and decreased strength.[2] (*Id.* at 19).

### i. Mental Impairment

The ALJ gave Dr. Kocher's opinion little weight because she stated in conclusory form that Ms. Lusk's mental impairment caused her to be disabled. AR 18. Dr. Kocher opined that Ms. Lusk had "severe depression and anxiety on many medications but [is] still disabled." (Pl.'s Br. [14] 5); AR 551. An ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

The ALJ determined that Dr. Kocher's treatment notes do not contain evidence to support her conclusion and noted that Dr. Kocher is a family practitioner and not a mental health specialist. AR 18. Ms. Lusk alleges error in this reasoning because Ms. Lusk reported depression on several occasions and because Dr. Kocher's opinion is entitled to "special weight." (Pl.'s Br. [14] 20). Ms. Lusk cites four medical records where she stated she was depressed; however, Dr. Kocher's notes indicate otherwise. In the first cited record, Dr. Kocher found her "mental status normal." AR 380. In the second, Dr. Kocher found "no appearance of anxiety, depression, or agitation." *Id.* at 459. In the third, she found Ms. Lusk to be in a "mildly depressed mood." *Id.* at 463. In the fourth, Dr. Kocher noted her mental status to be depressed but not tearful or anxious. *Id.* at 566. In addition, in one medical record Ms. Lusk complained of depression but denied anxiety. *Id.* at 462. In another record, she denied both depression and anxiety. *Id.* at 507. Throughout the record, Dr. Kocher found Ms. Lusk to have a normal mental status.

---

[2] The ALJ did not specifically discuss the physical therapists' records; however, their notes do not indicate severe degenerative disc disease. If anything, I find that the ALJ's omission was a harmless error because it was inconsequential to the ultimate nondisability determination. *See Huff v. Astrue,* 275 Fed. Appx. 713, 716 (9th. Cir. 2008).

5 – OPINION AND ORDER

Dr. Kocher's statement that Ms. Lusk has "severe depression" is contradicted by her notes and observations. Such a discrepancy is a clear and convincing reason for not relying on the doctor's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ ordered a psychodiagnostic evaluation by Dr. Scharf in January 2009. Dr. Scharf reported that Ms. Lusk "has shown long standing behavioral problems which is characteristic of a personality disorder." AR 610-11. He also noted that Ms. Lusk had difficulty staying awake, probably due to misusing her medication or because she was overmedicated. *Id.* at 15. Dr. Scharf indicated that her reported difficulties suggest exaggeration. During the interview, Ms. Lusk reported she was depressed every day and could not lift "anything" when talking about leaving her previous job. *Id*. The ALJ did not err in giving little weight to Dr. Scharf's opinion because he only examined Ms. Lusk once and he indicated that she was only marginally cooperative. *Id.* at 18.

Because Dr. Kocher's opinion was conclusory and unsupported by her notes and observations, I find the ALJ accorded adequate weight to her assessment regarding Ms. Lusk's mental impairment.

### ii. Physical Impairment

Ms. Lusk also challenges the weight given to Dr. Kocher's opinion in regards to her physical impairment. The ALJ found that the treatment notes did not contain evidence of objective evidence to support the conclusions and Dr. Kocher appeared to be relying primarily on Ms. Lusk's subjective pain complaints to determine she was unable to work. *Id*. Although Dr. Kocher noted that Ms. Lusk has significant degenerative disc disease based on exam, x-ray, and an MRI, the severity of this condition is inconsistent with Ms. Lusk's daily activities. Ms. Lusk claims she can only lift five pounds, walk for ten minutes, and sit for ten minutes at one time. *Id.* at 17. Her daily activities, however, are not limited to this degree. The ALJ noted Ms. Lusk's ability to: take

care of personal hygiene; get her son off to school; cook; shop; wash dishes; do laundry; vacuum; sweep; drive; assist her son with homework; and put her son to bed. *Id*. She also noted Ms. Lusk visits with a male friend three times per week and a female friend several times a week. *Id.*

The ALJ ordered a comprehensive orthopedic evaluation by Dr. Ogisu in February 2009. Ms. Lusk contends that the ALJ improperly favored the opinion of Dr. Ogisu. She argues that Dr. Ogisu's evaluation is imprecise and contradictory based on his comments. For example, Ms. Lusk argues that his comments are "inherently inconsistent" because he found that there was "nothing which would explain a severe level of pain," and because the MRI studies reveled "mild" degenerative disc disease. (Pl.'s Br. [14] 20); *see also* AR 594. I find that Dr. Ogisu's comments are consistent with his evaluation. Dr. Ogisu diagnosed Ms. Lusk with chronic neck and back pain, a leg discrepancy, history of fibromyalgia, and a recent left knee strain. AR 15. He noted that the MRI studies showed mild degenerative joint disease. *Id.* Dr. Ogisu noted that while Ms. Lusk's efforts were mostly good, they were less than full at times. *Id.*

Ms. Lusk contends that the ALJ improperly favored Dr. Ogisu's opinion over Dr. Kocher's. "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir.2001). When there is a conflict between the opinions of the treating physician and an examining physician, as here, the ALJ may disregard the opinion of the treating physician only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quotation omitted).

In addition to Dr. Ogisu's evaluations, the ALJ gave significant weight to the medical record review conducted by Martin Kerhli, M.D. On August 8, 2006, he opined that Ms. Lusk

7 – OPINION AND ORDER

could stand/walk for about six hours in an eight hour day, sit for about six hours in an eight hour day, carry ten pounds frequently, and carry twenty pounds occasionally. AR 18. In addition, he opined that Ms. Lusk could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could also occasionally climb ladders, ropes, and scaffolds. *Id.* This assessment was affirmed by Sharon Eder on October 27, 2006. *Id.* The ALJ provided sufficient reasons, supported by substantial evidence in the present record, for giving Dr. Kocher's opinion little weight. Therefore, I find that the ALJ did not err in her assessment of Dr. Kocher's opinion regarding her physical impairments.

## II.     Ms. Lusk's Credibility

Ms. Lusk argues that the ALJ improperly determined she was not credible based on the RFC, rather than first determining her credibility and then determining the RFC. Because the RFC assessment must include a credibility determination, 20 C.F.R § 404.1534(a)(3); Social Security Ruling 96-8p at *7 (*available at* 1996 WL 374184), this court will not affirm an ALJ's credibility decision based only upon reference to the RFC assessment. *Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1167 (D. Or. 2010); *see also Lowe v. Astrue*, No. 10-0904, 2011 WL 4345168, at *3 (D. Or. Sept. 15, 2011). There is nothing wrong, however, with an ALJ stating a conclusion and then explaining it, as opposed to providing an explanation and then reaching a conclusion. Therefore, I reject this argument.

Ms. Lusk also argues that the ALJ failed to provide clear and convincing reasons for finding her not credible and that the ALJ disregarded the evidentiary tone and content of the medical record. (Pl.'s Br. [14] 13, 15). This argument fails as well. The ALJ must consider all symptoms and pain which "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged,"

8 – OPINION AND ORDER

absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d at 883.

   The ALJ found Ms. Lusk's statements concerning the intensity, persistence, and limiting effects of her symptoms not credible. AR 17. As mentioned above, the ALJ found her activities of daily living inconsistent with her symptom statements. Dr. Ogisu said Ms. Lusk's efforts were "mostly good, but less than full at times," during a comprehensive orthopedic examination. *Id.* at 15. During her psychodiagnostic examination, Dr. Scharf noted that Ms. Lusk had difficulty being specific without prompting due to evasiveness and difficulty with thinking clearly. *Id.* at 606-11. The tone and content of the medical record that Ms. Lusk is referencing primarily consists of her subjective pain complaints made to Dr. Kocher, whose opinion has properly been given little weight. Additionally, despite claiming to be unable to work due to chronic pain, Ms. Lusk's medical records indicate that she was frequently found to not be in acute distress.

9 – OPINION AND ORDER

Ms. Lusk's claims are inconsistent with her reported activities of daily living and the objective medical evidence that she is capable of light work with limitations. The ALJ's specific credibility findings are supported by Ms. Lusk's activities of daily living and the medical opinions that she is not as physically limited as she claims. Therefore, the ALJ did not err in finding Ms. Lusk not credible.

### III.    Step Two Findings

Ms. Lusk argues that the ALJ erred by failing to make a severity finding regarding her degenerative disc disease and depression at step two of the sequential process. The Commissioner concedes that both impairments should have been specifically recognized by the ALJ but argues that the omission was a harmless error. (Def.'s Br. [15] 13). Neglecting to list an impairment as a step two severe impairment is harmless when the ALJ considered the limitations caused by the impairments in assessing the claimant's RFC at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). The ALJ's RFC incorporated several physical limitations to take Ms. Lusk's degenerative disc disease into account, including lifting, carrying, sitting, standing, walking, and reaching restrictions. AR 16. Ms. Lusk is to avoid moving machinery due to her medications. *Id.* Her non-severe mental impairment was also taken into account as ALJ's RFC limits her to simple, repetitive tasks. *Id.*

Because the ALJ considered her degenerative disc disease and depression and accommodated both impairments in determining Ms. Lusk's RFC, I find that the ALJ's exclusion at step two a harmless error.

### IV.    RFC Findings

Ms. Lusk argues that the ALJ improperly relied on the opinion of Dr. Ogisu and non-examiners and improperly rejected the opinion of Dr. Kocher in determining her RFC. (Pl.'s

Br. [14] 22). As a result of the RFC finding, vocational expert, Gail Young, testified that Ms. Lusk could perform her past relevant work as a cashier. AR 18. Ms. Lusk challenges the RFC finding on the basis that the ALJ improperly assessed Dr. Kocher's opinions.

Aside from the MRI, the record does not include objective evidence supporting Ms. Lusk's physical limitations. As discussed above, Dr. Kocher's opinion was properly given little weight due to her reliance on Ms. Lusk's subjective complaints and the inconsistencies between the subjective complaints and her own notes. The ALJ also found that Ms. Lusk's arguments regarding the severity of her depression and ongoing pain not credible. As a result, I find no error in the ALJ's RFC determination.

## CONCLUSION

For the foregoing reasons, I find the ALJ's decision to be adequately supported. The Commissioner's decision is therefore affirmed.

IT IS SO ORDERED.

DATED this   23rd   day of April, 2012.

/s/ Michael W. Mosman<br>
MICHAEL W. MOSMAN<br>
United States District Court